UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

ERIC ONYEWUCHI IWU,

           Petitioner,

   v.                                  23-CV-1246-LJV
                                              DECISION & ORDER

JEFFREY SEARLS,

           Respondent.

─────────────────────────────

Eric Onyewuchi Iwu has been detained in the custody of the United States Department of Homeland Security ("DHS") since December 2, 2022—more than 17 months. Docket Item 1 at ¶ 3. On December 1, 2023, Iwu filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Docket Item 1. On February 16, 2024, the respondent answered the petition, Docket Item 7; and on March 4, 2024, Iwu replied, Docket Item 9.

For the reasons that follow, this Court grants Iwu's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with DHS.

Iwu is a native and citizen of Nigeria. Docket Item 7 at ¶ 3. He entered the United States on October 5, 2014, as a "nonimmigrant with authorization to remain in the country until April 4, 2015." *Id.*; *see* Docket Item 1 at ¶ 2.

On August 20, 2018, DHS issued a "Notice to Appear," charging that Iwu was subject to removal from the United States under the Immigration and Nationality Act

("INA"), 8 U.S.C. §§ 1101-1537.  Docket Item 7-2 at 1-2.  More specifically, DHS charged that Iwu was subject to removal under section 1227(a)(1)(B) as a nonimmigrant who had remained in the United States for a time longer than permitted.  *Id.*

On December 11, 2018, an Immigration Judge ("IJ") ordered Iwu removed to Nigeria.  *Id.* at 3.  Iwu then moved to reopen his removal proceedings, but the IJ denied that motion.  *See id.* at 8-10.  On April 24, 2019, Iwu appealed the IJ's order denying his motion to the Board of Immigration Appeals ("BIA").  *Id.* at 12.  On November 25, 2019, the BIA granted Iwu's motion and remanded the case to the IJ.  *Id.* at 13.

In 2019 and 2020, Iwu was convicted of driving while intoxicated three times. *See id.* at 5-6.  Then, on September 30, 2021, he was indicted for "wire and bank fraud." *See* Docket Item 7-1 at ¶ 23.  About a year later, he pleaded guilty to one count of structuring transactions to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3).  Docket Item 7-2 at 25-46.  He was sentenced to 364 days' imprisonment and three years' supervised release.  *Id.* at 26-27.

On December 2, 2022, Iwu was brought from the Niagara County Jail to BFDF, *id.* at 48, where he received a "custody determination" and requested a bond hearing to review that determination, *see id.* at 51.  A few days later, DHS issued a second "Notice to Appear," charging that Iwu was subject to removal not only under section 1227(a)(1)(B), but also under section 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, namely committing an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.00.  *Id.* at 53-54; *see* Docket Item 7-1 at ¶ 28.

On December 20, 2022, Iwu withdrew his request for a bond hearing so that he could retain counsel, which he did.  *See* Docket Item 7-2 at 55; *see also* Docket Item 7-1 at ¶ 29.  On January 20, 2023—after Iwu received several adjournments—the IJ conducted a bond hearing and determined that Iwu's detention was mandatory because he was held under 8 U.S.C. § 1226(c).  *See* Docket Item 7-1 at ¶¶ 29-32.

On February 7, 2023, Iwu requested that his removal hearing be adjourned to February 28, 2023, so that he could file a Form I-589, Application for Asylum and for Withholding of Removal.  *Id.* at ¶ 33.  Iwu did so, *id.* at ¶ 37, and after reviewing the parties' papers, the IJ found Iwu removable, *id.* at ¶ 38.  A removal hearing originally was scheduled for April 17, 2023, *id.*, but was postponed until May 3, 2023, because Iwu's counsel withdrew and was replaced by new counsel, *id.* at ¶ 40.  Then, on May 3, 2023, the hearing again was postponed—this time, to June 29, 2023—because Iwu's counsel requested "a three-hour block of time" to "complete the hearing," and that much time was not available until June.  *Id.* at ¶ 41.  On June 23, 2023, Iwu received an extension of time to submit evidence and the hearing was rescheduled to August 3, 2023.  *Id.* at ¶ 43.

At the conclusion of the August 3 hearing, the IJ ordered Iwu removed to Nigeria. *Id.* at ¶ 44.  On September 4, 2023, Iwu appealed that order to the BIA.  *Id.* at ¶ 45.  On October 24, 2023, Iwu received a three-week extension to file his brief in support of his appeal.  Docket Item 7-2 at 58.

While his appeal was pending, Iwu received a second bond hearing on October 17, 2024.  Docket Item 7-1 at ¶ 46.  The IJ again found that Iwu was detained under

section 1226(c) and therefore was not eligible for release.  *Id.*  Iwu appealed that order to the BIA.  *Id.* at ¶ 49.

On January 22, 2024, the BIA remanded Iwu's removal proceeding to the IJ because the IJ's decision "d[id] not contain sufficiently clear factual findings or legal analysis to allow for meaningful appellate review."  Docket Item 7-2 at 61-65.  The BIA remanded Iwu's bond proceeding on similar grounds.  *See id.* at 68-69.  Iwu's case now remains pending before the IJ.  *See* Docket Item 7-1 at ¶¶ 50-52.

## DISCUSSION

### I.   HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Iwu is validly detained under 8 U.S.C. § 1226(c) as a noncitizen with pending removal proceedings convicted of an aggravated felony.  Docket Item 7 at ¶¶ 39-40; *see* Docket Item 7-4 at 9.

Iwu disagrees on two grounds.  First, he argues that he is detained under section 1226(a), not section 1226(c), and that his detention therefore is not mandatory.  *See* Docket Item 1 at ¶ 8.  Second, he argues that his detention without a timely and meaningful opportunity to demonstrate that he should not be detained violates his right to procedural due process under the Fifth Amendment of the United States Constitution.  *Id.* at ¶¶ 26-61.

II.     **STATUTORY CHALLENGE**

Iwu first argues that he is detained under section 1226(a), which requires the government to provide a bond hearing to individuals held under that section.  *See id.* at ¶ 8; *see also* Docket Item 9 at 3-8 (asserting that the IJ "did not engage with" Iwu's argument that he was not convicted of an aggravated felony).  Iwu may be correct:  The BIA remanded Iwu's bond proceeding to the IJ "for further assessment as to whether [Iwu] is subject to the mandatory detention provisions of [section 1226(c)]."  *See* Docket Item 7-2 at 68-69.  But the Court need not and does not decide that issue—which currently is pending before the IJ—because the outcome of Iwu's petition is the same regardless of whether he is detained under section 1226(a) or section 1226(c).  *See infra* at 5-15.

III.    **DUE PROCESS**

Iwu also argues that his continued detention violates the Due Process Clause. *See* Docket Item 1 at ¶¶ 59-61.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id*. "This requirement has traditionally been referred to as 'procedural' due process."  *Id*.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* citations and internal quotation marks omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

Iwu challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at ¶¶ 59-61. The Due Process Clause is not offended by the mandatory

detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (alterations omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to [a noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

## A.    Iwu's Detention

"[W]hen weighing the lawfulness of the continued detention of [a noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019). This Court, for example, has considered "(1) the total length of detention to date;

(2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Iwu has been in DHS custody since December 2, 2022—more than 17 months. *See* Docket Item 1 at ¶ 3. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018) (collecting cases). In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[1]

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the

---

[1] *See, e.g.*, *Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wis. 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Iwu's detention for more than 17 months far exceeds the four-month average cited in *Demore*. The length of Iwu's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Iwu's detention. *Sajous*, 2018 WL 2357266, at *11. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717.

The government has submitted the declaration of a BFDF employee regarding the conditions of Iwu's detention. *See* Docket Item 7-3. In that declaration, the government avers that the facility is unlike a prison because "most persons . . . are not locked in a cell," they "do not face the same level of restrictions on movement typical of a prison," and they "ordinarily may move throughout the [f]acility without being required to wear handcuffs or leg retraints." *Id.* at ¶¶ 7-8. "Six of the dorm units are open-dorm style," but others—for detainees with criminal histories—have cell doors that close at night. *Id.* at ¶ 8. And "persons held at BFDF [are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "brought to the Special Housing Unit" ("SHU"). *Id.* at ¶ 7.

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF certainly "resemble penal confinement" for at least some persons detained there. *Muse*,

409 F. Supp. 3d at 717.  In fact, Iwu says that he "has been housed in a locked-in cell

unit" at BFDF.  Docket Item 9 at 11.  So the government has not shown that Iwu's

detention is "meaningfully different from [detention in] a penal institution."  *Sajous*, 2018

WL 2357266, at *11.  This factor therefore weighs in Iwu's favor as well.

Third, courts consider whether the detainee has prolonged his own detention.

The Second Circuit has found that this factor weighs against finding detention

unreasonable when a noncitizen has "substantially prolonged his stay by abusing the

processes provided to him" but not when "an immigrant . . . [has] simply made use of

the statutorily permitted appeals process."  *Hechavarria v. Sessions*, 891 F.3d 49, 56

n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has

noted, "appeals and petitions for relief are to be expected as a natural part of the

process.  [A noncitizen] who would not normally be subject to indefinite detention cannot

be so detained merely because he seeks to explore avenues of relief that the law

makes available to him."  *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in

*Hechavarria*, 891 F.3d at 56 n.6).  Indeed,

> although [a noncitizen] may be responsible for seeking relief, he is not
> responsible for the amount of time that such determinations may take.  The
> mere fact that [a noncitizen] has sought relief from deportation does not
> authorize the [government] to drag its heels indefinitely in making a
> decision.  The entire process, not merely the original deportation hearing, is
> subject to the constitutional requirement of reasonability.

*Id*.

Here, Iwu has requested and received several adjournments and extensions.

*See generally* Docket Item 7-1.  But those requests do not amount to an "abus[e of] the

processes provided to him."  *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556

U.S. at 436).  Indeed, most of the approximately five-month delay arguably attributable

to Iwu was due to his attempts to retain legal counsel.  And other than those adjournment and extension requests, Iwu has done nothing more than challenge his removal and appeal the IJ's decisions to the BIA.  The government decisionmakers, in contrast, collectively are responsible for about twelve months of delay.  Therefore, the third factor weighs in Iwu's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  This Court declines to weigh the merits of Iwu's claims pending before the IJ.

After balancing all these factors, this Court finds that Iwu's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably prolonged detention demands.

> **B.    The Process Due to Iwu**

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake."  *Nelson v. Colorado*, 581 U.S. 128, 135 (2017).  Here, that analysis leads to the conclusion that Iwu's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause."  *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

11

Iwu's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Iwu has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), Iwu has not conceded his deportability, and the resolution of that issue remains pending.  In fact, his interest in liberty in the United States must indeed be strong for him to subject himself to unreasonably prolonged detention while contesting his deportability.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

This Court recognizes that the government's interest in detaining Iwu also may be strong.  The government contends that Iwu's disregard for the law justifies his continued detention.  Docket Item 7-4 at 19.  "The government's interest in preventing crime by arrestees is both legitimate and compelling."  *Salerno*, 481 U.S. at 749. Moreover, general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters."  *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).

### C.    The Procedures Used Thus Far

Turning to the procedures used thus far in this case, Iwu received two individualized custody determinations under 8 C.F.R. § 236.1.  *See* Docket Item 7-2 at 23-24, 51.  In those proceedings, Iwu bore the burden of demonstrating that, if released, he "would not pose a danger to the safety of other persons or of property" and that he "is likely to appear for any scheduled proceeding."  8 C.F.R. § 236.1(c)(3).  Those

determinations were made by DHS officials, rather than by a neutral decisionmaker such as an IJ.  *See* Docket Item 7-2 at 23-24, 51.  Iwu also has received two bond hearings before an IJ.  *See* Docket Item 7-1 at ¶¶ 32, 46.  But both hearings occurred before Iwu's detention became unreasonably prolonged, and at both hearings the IJ simply determined that Iwu was not eligible for relief because he was detained under section 1226(c).  *See id.*

This Court concludes that in light of the procedures used thus far, there is a significant risk that Iwu will be erroneously deprived of his liberty interests.  Now that Iwu's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner."  *Armstrong*, 380 U.S. at 552.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation and internal quotation marks omitted).  When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[2]  This requires consideration of less restrictive alternatives to detention.  *See id*.; *cf. United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the [g]overnment's obligation to prove that the alternative will be ineffective to achieve its goals.").

### D.    Conclusion

Whether he is held under section 1226(a) or section 1226(c), Iwu's detention has been unreasonably prolonged.  He therefore is entitled to an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him.[3]

---

[2] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably prolonged immigration detention.

[3] As this Court has explained, in "a 'typical' [section] 1226(a) bond hearing, [*the noncitizen*] must prove '*to the satisfaction of the immigration judge*' that he 'does not present a danger' before the immigration judge could even consider whether conditions of supervision might suffice to protect the public."  *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 239-40 (W.D.N.Y. 2019) (emphasis in original) (quoting 8 C.F.R. § 1236.1(c)(8)).  The bond hearings that Iwu received did not even apply that standard;

Iwu must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Iwu's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

### ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Iwu from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Iwu's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to

---

instead, the IJ found that he was not eligible for a section 1226(a) hearing because he was detained under section 1226(c).  So Iwu's hearings certainly did not meet the procedural requirements noted above.

detention would also address the government's interests.  In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure Iwu's appearance and the safety of the community—that is, even with conditions, Iwu presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.


SO ORDERED.

Dated:      May 15, 2024
            Buffalo, New York


                                 _/s/ Lawrence J. Vilardo_
                                 LAWRENCE J. VILARDO
                                 UNITED STATES DISTRICT JUDGE